Peter Strojnik, 6464
**STROJNIK, P.C.**
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
E-mail: *ps@strojnik.com*
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ARCADE ENTERTAINMENT, LLC, ) | NO. CV-14-01233-PHX-SRB |
| ) | |
| Plaintiff, ) | **STATEMENT OF FACTS IN SUPPORT OF** |
| ) | |
| vs. ) | **MOTION FOR SUMMARY JUDGMENT** |
| ) | |
| AGCS MARINE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

_____

Plaintiff submits the following Statement of Facts in support of its Motion for Summary Judgment.  The Statement is divided into 3 parts: Part One based primarily on Callan Declaration. Part 2 based primarily on Callan Deposition. Part 3 based primarily on AGCS Deposition.

**PART 1 – Callan Declaration**

1. Alex Callan is the manager of Plaintiff Arcade Entertainment, LLC, case number CV-14-01233-PHX-SRB, *Arcade Entertainment v. AGCS Marine Insurance Company.* (Exhibit 1 – Callan Declaration)

2. Arcade's offices are located in Mesa, Arizona. Mr. Callan works from the Mesa office. Id.

3. In 2011, Arcade decided to purchase arcade type gaming machines in the State of Texas. Mr. Callan was in charge of the logistics for the construction and installation of the machines in various small businesses, such as gas stations, smoke shops, convenience and liquor stores.  Arcade decided to install the machines in Texas based on favorable Texas law governing arcade-type gaming machines. Id.

4. As part of Mr. Callan's duties, he purchased a policy of insurance insuring the machines with AGCS Marine insurance company. Id.

5. Since Mr. Callan was working out of Mesa, he hired independent contractors to maintain and repair the machines as needed, and to collect the revenue from the machines and send the revenue to the offices in Mesa. Id.

6. In 2011, Mr. Callan rented a U-Haul storage unit where the machines were initially stored. From there, they were delivered to and installed in various businesses. Id.

7. Mr. Callan initially hired one Paul Peters to provide general maintenance and support for the machines, to collect the revenues and to pay the owner of the establishment his share of the revenue. Id.

8. Mr. Callan did not retain supervision or control over Mr. Peters with respect to the *method or manner* of maintenance, collections and distributions of revenues. Mr.

Peters himself had control over the manner of accomplishing the maintenance and collections. His actions were purely autonomous. Id.

9.  It would have been logistically impossible for Mr. Callan to exercise supervision and control over Mr. Peter's maintenance and collections activities. Id.

10. After Mr. Peters left his independent contractor positions with Arcade, Mr. Callan hired Norma Reveles and Troy Mitchell to take over the maintenance, repairs and collections from the machines. Id.

11. Mr. Callan did not retain supervision or control over Ms. Reveles and Mr. Mitchell with respect to the *method or manner* of maintenance, collections and distributions of revenues. Mr. Peters himself had control over the manner of accomplishing the maintenance and collections. Their actions were purely autonomous. Id.

12. In August of 2013, Mr. Callan travelled to Texas to check on the machines. Id.

13. Mr. Callan visited the U-Haul storage. He found that the machines were gone. He then visited various businesses where the machines were supposed to be located only to find that they had been removed, except for 5 machines that were still located at a business named Oasis Pipe and Tobacco. Id.

14. In discussing the absence of the machines with the proprietors of the various businesses, Mr. Callan learned that the machines were removed by Ms. Reveles and Mr. Mitchell. Id.

15. Mr. Callan called Ms. Reveles to find out what happened. Ms. Reveles stated that "I don't have your machines anymore. I'm really sorry. I don't have them." She also stated, "I don't have them anymore. I can't get them back for you." Norma did not offer an explanation for the loss of the machines. She was embarrassed and did not want to talk about it. <u>Id.</u>

16. Mr. Callan also spoke with Troy who repeated what Norma told him. <u>Id.</u>

17. To this day Mr. Callan does not know what happened with the machines. <u>Id.</u>

18. Arcade has not recovered the machines. Of the 60 machines Arcade owned, 47 were gone. Arcade's loss for 47 machines is $140,500.00. <u>Id.</u>

19. Neither Norma Reveles nor Troy Mitchell were partners, employees, directors, trustees or authorized representatives of Arcade. Their function was to maintain the machines, to repair them and to do the collections from the machines. They were independent contractors. <u>Id.</u>

20. Neither Norma Reveles nor Troy Mitchell were managers of members of Arcade at any time. <u>Id.</u>

21. Neither Norma Reeves not Troy Mitchell had any interest in the machines. <u>Id.</u>

22. Arcade did not entrust Norma Reeves not Troy Mitchell with the machines for any purpose. <u>Id.</u>

23. Mr. Callan's statement has been taken twice by AGCS:  First on November 5, 2013 when AGCS's investigator took a recorded statement and then again on October 23, 2014 when AGCS's counsel took his deposition. Id.

24. Arcade considers AGCS's delays in investigations as a denial of the claim since AGCS has not paid on this legitimate claim. Id.

25. AGCS currently owes Arcade $140,500.00 for 47 machines, plus interest, costs and attorney's fees. Id.

**PART TWO – Callan Deposition**

26. At relevant times, Plaintiff Arcade Entertainment, LLC, ("Arcade") supplied arcade-type gaming machines to small retail business such as gas stations, liquor stores, smoke shops, and convenience stores. The customers pay to play. A winning play pays with merchandise of the type typically sold at the location. At relevant times, the machines were located in Texas. See Exhibit 2, October 23, 2014 Deposition of Callan, page 7 lines 8-17 (hereafter "Callan, 7:8-17".) The machines were insured by Defendant AGCS Marine ("AGCS") against, *inter alia*, theft.

27. In August of 2013, 47 machines were stolen and Arcade filed a claim with AGCS. (Callan, 8:15-20.)

28. In August of 2013, Mr. Callan, Arcade's manager, travelled to Texas to check the status of the machines. He noticed that the machines were gone from the storage unit. (Callan, 13:10-12.) The storage unit was first rented in 2011 (Callan, 14:1-4) The

storage unit was initially rented because Arcade needed a staging area to be able to put the machines as they found locations to place them. (Callan 16:13-15.) Mr. Callan does not know whether the machines were stolen from the storage unit or another location. (Callan47:18-21)

29. Mr. Callan gave a recorded statement to SGCS's investigator, Mr. Myers on November 5, 2013. Mr. Callan gave Mr. Myers true and correct responses to questions. (Callan 21:14-22:4.)

30. Prior to the theft, the machines had been serviced by one Paul Peters. Mr. Peters' duty was to go to the locations, pull out the money, pay the proprietor his share and make sure the machines were working properly. Mr. Peters was paid $500 per week. (Callan, 19:18 – 20:5.)

31. Subsequently to Mr. Peters, Arcade hired Norma Reeves and her husband Troy (Mitchell). (Callan, 23-8-19). They were also paid $500 per week. (Callan 26:10.)

32. Callan went to Texas in August of 2013 to check on the machines. He rented a U-Haul and drove to the storage unit. (Callan 30:15-18.)

33. Upon arrival to the storage unit, he noticed that it was primarily empty other than some broken pieces and garbage. (Callan, 31:20-21.) There were no signs of forced entry. The unit was still locked. Only Mr. Callan, Troy and Norma had keys. (Callan. 32:4.)

34. Mr. Callan then went to the closest locations where the machines were supposed to be, Oasis Mug Shop or Safeway Smoke Shop. (Callan 33:22-33:1.) He then checked other locations. (Callan 35:1-25.)

35. Omar at Toney's told Mr. Callan that Troy and Norma took the machines. (Callan, 36:10.) Mr. Callan continued his search at other locations, but all the machines were gone, (Callan, 36:15-22.), other than 5 machines remaining at Oasis Pipe and Tobacco. Mr. Callan took those machines with him. There were no other locations with machines. (Callan 42:16-22.)

36. The person at Arroyo's told Mr. Callan the same as Omar at Tony's. The guy at Texaco Game Room told him the same thing. (That Norma and Troy took the machines.) (Callan 38:10-39:15.)

37. Mr. Callan called Norma who said to him, "I don't have your machines anymore. I'm really sorry. I don't have them." She also stated, "I don't have them anymore. I can't get them back for you." (Callan, 45:10-22.) Norma did not have an explanation for the loss of the machines. She was embarrassed and did not want to talk about it. (Callan 58:24-25.)

38. Mr. Callan also spoke with Troy who repeated what Norma told him. (Callan 45:22-46:10.)

39. Mr. Callan made a report with the Arlington Police Department. (Callan 51:14-18.)

40. Mr. Callan also called the Fort Worth PD. (Callan, 52:4-11.)

41. As a result of the loss, Arcade made a claim for $140,500.00 for 47 machines. (Callan, 55:18-24 and 56:22-24.)

**PART 3 – AGCS Rule 30(b)(6) Deposition**

42. The loss occurred in August of 2013 and was reported to the insurer on October 2, 2013. See Exhibit 2, 30(b)(6) Deposition of AGCS Marine Insurance Company - Denise Lupear October 23, 2014 at p. 5 lines 14-20 (hereafter "Lupear, 5:14-20.), and Exhibit 3, insurer's notes.

43. AGCS confirms that the insured property in issue were arcade gaming machines. (Lupear, 12:1-3.)

44. The insurer was concerned with the fact that the last persons who saw the machines were the service contractors, Norma Reeves and Troy Mitchell. The insurer was concerned that the machines were taken by the service contractors. (Lupear, 11-12.)

45. Ms. Lupear was charged with investigating whether Norma Reveles or Troy Mitchell were contractors or employees. She was also charged with gathering other facts of the loss. (Lupear,13-14.)

46. At the time the insurer received the claim, the insurer believed that the claim was a legitimate theft claim. (Lupear, 15:2-3.)

47. Even though the insurer believed that there was a theft claim, it required more information. The insurer believed that a theft had occurred. (Lupear, 16:7-14 and 16:15-17.)

48. The entity who decided how much investigation is needed is the insurer, not the insured. (Lupear, 20:13-16.)

49. The insured has no say in how much investigation the insurer conducts before payment of a claim; if the insurer wants to, it can conduct an investigation for ten years. (Lupear, 20-21.)

50. If the facts support continued investigation, AGCS believes it can continue investigating even if it takes ten years, depending on the legalities of the jurisdiction. (Lupear, 20:21-21:4.)

51. The insurer has complete control over the investigation. (Lupear, 22:7-9.)

52. The insurer wanted to talk to Norma Reveles because she was the last one to see the machines. (Lupear, 16:6-11.)

53. The insurer could not find Norma Reveles, but they found Troy Mitchell in February or March of 2014. Mr. Mitchell told the insurer that Arcade requested that the machines be removed from business locations to storage. He did not provide any other information. (Lupear, 27:10-20.)

54. AGCS was initially concerned "about whether or not the people that were involved may have done something with the machines". (Lupear, 11:14-15.)

55. During its investigation, in February or March of 2014, AGCS's investigator spoke with Troy Mitchell who told AGCS that Mr. Callan asked them to remove the machines to the storage unit. He would say nothing else. (Lupear, 27:10-21.) See also PSFO 28.

56. A statement from Norma Reveles or Troy Mitchell was necessary before AGCS could make a decision regarding coverage. (Lupear, 29:16 – 30:1.)

57. Since AGCS could not speak with Troy or Norma, they would then have to speak with Mr. Callan again, but AGCS does not know whether anyone ever called Mr. Callan to speak with him. (Lupear, 30:2-31-11)

58. AGCS took a second statement from Mr. Callan's in the form of a deposition on October 23, 2014. Despite taking his deposition, AGCS *still* cannot make coverage decision. (Lupear, 31:16-20.)

59. AGCS would consider a ten year investigation to be "immediate and adequate". (Lupear, 33:5-9.)

60. AGCS "attempted" to investigate whether Troy and Norma were Arcade's employees. AGCS interviewed Mr. Callan regarding this question. AGCS has not come to a conclusion whether Norma or Troy were Arcade's "employees" because it needs more information from Norma and Troy. AGCS still needs Norma's statement. AGCS remains unclear whether Norma and Troy were employees or contractors. (Lupear, 33:12-34:11.)

61. Troy and Norma were not partners in Arcade; however, AGCS never investigated whether they were directors, but, as of October 23, 2014,  AGCS is still looking into that. (Lupear, 34:12-36:1.)

62. As of October 23, 2014, AGCS was still investigating whether Troy and Norma were trustees. AGCS did not ask Mr. Callan whether Troy or Norma were trustees. (Lupear, 36:6-17.)

63. The reason that AGCS did not inquire whether Troy or Norma were trustees is because it never came up. AGCS made the assumption that they were not involved in the actual company of Arcade. (Lupear, 36:19 – 37:1.)

64. The question whether Norma or Troy were employees or contractors remains underdetermined. (Lupear, 38:1-4.)

65. In order to determine whether they were employees or contractors, AGCS would have interviewed them, but AGCS has not been able to secure their statements. (Lupear, 38:5-18.)

66. Until AGCS speaks with Troy and Norma, it will not be able to determine coverage, even if it takes ten years. (Lupear, 39:3-19.)

67. However, "[n]ow that we're in the position we can get their statements or their depositions, we will be doing that." (Lupear, 38:25-39:2)

68. No statements have been obtained from Troy and Norma since AGCS's deposition, and no depositions noticed or taken of them. (Judicial Notice.)

69. AGCS is still investigating whether Norma and Troy are authorized representatives of Arcade. (Lupear, 40:3-5.)

70. According to Mr. Callan, Troy's and Norma's role was "to maintain the machines, to repair them [and] to do the collections." (Lupear, 41:6-14.)

71. AGCS has not yet determined whether Troy or Norma were managers of Arcade. (44:3-12.)

72. AGCS continues to investigate what Troy's and Norma's role was with Arcade. AGCS needs to find out "what was their understanding of their role". (Lupear, 46:3-7)

73. An adequate investigation would include looking up Troy's and Norma's role as members of managers of a limited liability company online. (Lupear, 46:17- 47:11.)

74. AGCS's attitude is, "we're investigating, we're investigating, we're investigating. It's now a year later. We're still investigating. And we have not paid because we're still investigating." (Lupear, 52:3-7.)

75. There is a basic bargain in insurance contracts: The insured pays the premium and the insurer agrees to pay for the covered loss. Here, Arcade suffered the loss but did not get indemnity. (Lupear, 52:13-53-10)

76. AGCS's attitude toward payment is summarized here (Lupear, 54:9-21.):

```
        Q.    BY MR. STROJNIK:  I'm not asking you from your
opinion.  I'm asking you for the insurance company's
opinion.  Looking at the entirety of this case in which
the insurance company says, so long as we investigate, we
will not admit or deny the claim, even if it takes ten
years, do you see anything wrong with that?
                MS. GOLIGHTLY:  Form and foundation.
                You can answer to the extent you're able to.
                THE WITNESS:  I'm not even sure how to
approach the answer other than there are material
questions still at issue.  As a prudent insurer, I
believe that those questions have to be answered before
we can issue a payment.
```

77. AGCS has no evidence that the claim is legitimate or illegitimate; AGCS is still investigating. (Lupear, 64:11-24)

RESPECTFULLY SUBMITTED this 2nd Day of January, 2014.

**STROJNIK, P.C.**

/s/

_____

By: Peter Strojnik
Attorney for Plaintiff

Copy of the foregoing electronically transmitted this 2nd day of January, 2015 to the Clerk of the District Court and to:

Donald L. Myles, Jr., Bar #007464
Chelsey M. Golightly, Bar #028431
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800

/s/