**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arcade Entertainment LLC, <br> Plaintiff, <br> v. <br> AGCS Marine Insurance Company, <br> Defendant. | No. CV-14-01233-PHX-SRB <br> **ORDER** |

The Court now considers Plaintiff Arcade Entertainment, LLC's Motion for Summary Judgment ("PMSJ") (Doc. 22) and Defendant AGCS Marine Insurance Company's Motion for Summary Judgment ("DMSJ") (Doc. 25).

**I. BACKGROUND**

Most of the facts in this case are undisputed. This case arises from an insurance coverage dispute over forty-seven stolen arcade machines. Plaintiff Arcade Entertainment, a company owned by Alex Callan, installed and operated arcade machines in small retail businesses throughout the Fort Worth, Texas area. (*See* Doc. 1-1, Compl.; Doc. 26, Def.'s Statement of Facts in Supp. of MSJ ("DSOF") ¶¶ 1-2; Doc. 30-1, Pl.'s Objections to DSOF ("PRSOF") ¶¶ 1-2.)[1] Defendant AGCS Marine Insurance Company insured these machines. (Doc. 23, Pl.'s Statement of Facts in Supp. of MSJ ("PSOF") ¶ 4;

---

[1] In citations where the Court has cited both the statement of facts and responsive statement of facts, no party has objected unless otherwise noted. This is also the case for the deposition testimony cited below. No objections were made unless the Court notes them.

Def.'s Controverting & Resp. Statement of Facts in Supp. of Its Resp. to Pl.'s MSJ ("DRSOF") ¶ 4.) Because Mr. Callan lives in Arizona, he hired Texas residents to perform the day-to-day operations of the business, such as servicing the machines, collecting and accounting the revenue the machines generated each week, and moving the machines at their discretion from a central storage locker in Arlington back and forth to the various local businesses. (*See* DSOF ¶ 4; PRSOF ¶ 4.) In September 2011, Mr. Callan hired the married couple of Norma Reveles and Troy Mitchell to perform these duties. (DSOF ¶ 3; PRSOF ¶ 3.)

After a sharp drop in revenue from the machines, Mr. Callan travelled to Texas in August 2013 to investigate. (DSOF ¶ 6; PRSOF ¶ 6.) Mr. Callan did not tell Ms. Reveles and Mr. Mitchell about his visit because he suspected Ms. Reveles of falsifying her revenue reports and was concerned she would move the machines or that something would happen to the machines. (DSOF ¶ 7; PRSOF ¶ 7.) Ms. Reveles had not reported any missing machines. Once Mr. Callan arrived at the Arlington storage locker, he discovered that there were no machines stored there. (DSOF ¶ 9; PRSOF ¶ 9.) The lock was still secure on the locker door, and there were no signs of forced entry. (DSOF ¶ 10; PRSOF ¶ 10.) The only other people with keys to the storage locker were Ms. Reveles and Mr. Mitchell. (DSOF ¶ 10; PRSOF ¶ 10.) Initially, Mr. Callan believed that the machines could have been in circulation. (Normally, twenty were kept in storage.) (Doc. 26-1, Ex. 1, Dep. of Alex Callan, Oct. 23, 2014, ("Callan Dep.") at 31:22-25, 32:20-33:9.) Mr. Callan then went to the businesses where the machines should have been. (DSOF ¶ 11; PRSOF ¶ 11.) All but five were gone. (DSOF ¶ 12; PRSOF ¶ 12.) Mr. Callan testified that in talking to the store owners and staff, he learned that Ms. Reveles and Mr. Mitchell had taken the machines from the businesses. (DSOF ¶ 13; PRSOF ¶ 13.) After gathering the few remaining machines and placing them in a new storage locker in the same facility "so those would[ not] disappear as well," Mr. Callan called Ms. Reveles, who told him that she did not have the missing machines and could not get them back. (DSOF ¶ 14; PRSOF ¶ 14.) Ms. Reveles did not explain what happened to the

machines.

Mr. Callan filed police reports for most of the stolen machines several weeks after he went to Texas. (DSOF ¶ 16; PRSOF ¶ 16.) In early October 2013, Plaintiff submitted an insurance claim for the machines. (DSOF ¶ 20; PRSOF ¶ 20.) Plaintiff estimated the value of the machines to be $140,500. (PSOF ¶ 18.) Defendant hired an investigator to look into the machines' disappearance within one week of the insurance claim to start validating the claim information Mr. Callan provided. (DSOF ¶ 22; PRSOF ¶ 22.) As claims investigators learned more information about Plaintiff's business and Ms. Reveles's and Mr. Mitchell's involvement with the business, Defendant attempted to secure statements from Ms. Reveles and Mr. Mitchell—especially because Ms. Reveles was the last person to have seen the machines, according to police reports. (*See* Doc. 23-3, Dep. of Denise Lupear, Oct. 23, 2014 ("Lupear Dep.") at 26:5-11.)[2] The investigators were unable to find them. (*Id.* at 27:10-13.) When Ms. Reveles and Mr. Mitchell were found in February or March 2014, Ms. Reveles would not provide a statement to the investigators, and Mr. Mitchell made a limited statement. (*Id.* at 26:21-27:21.) Mr. Mitchell stated only that Mr. Callan requested that the machines be removed from business locations to be held in storage. (*Id.* at 27:15-18.) Ms. Lupear testified that investigators were still attempting to get Ms. Reveles and Mr. Mitchell to cooperate in giving full statements when this lawsuit was filed in late April 2014. (*See id.* at 28:6-22.) Ms. Reveles and Mr. Mitchell still have not provided any additional information or statements to investigators.

The parties have moved for summary judgment on Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. For the breach

---

[2] Defendant argues that Plaintiff's reliance on the Lupear deposition is improper to the extent Plaintiff uses that testimony to address coverage issues rather than claims investigation issues. (Doc. 33, Def.'s Reply in Support of MSJ at 5.) Because Ms. Lupear was part of the AGCS special investigations unit and was not the person designated for coverage decision-making (i.e., the application of the policy and its exclusions to the insurance claim), the parties agreed that her testimony would not be offered about coverage issues for lack of foundation. (Lupear Dep. at 7:3-16.) The Court cites the Lupear deposition to address issues relevant to Ms. Lupear's knowledge of the claims investigation.

- 3 -

1  of contract claim, Plaintiff argues that because the evidence in the record shows that
2  Defendant cannot prove the application of any policy exclusions, the policy terms require
3  coverage of the stolen arcade machines. (*See* PMSJ at 12-14.) Plaintiff also argues that
4  the duration of the investigation made the investigation unreasonable and conducted in
5  bad faith. (*Id.* at 12-13.) Defendant argues that it is entitled to summary judgment on the
6  breach of contract claim because the evidence shows that the insurance claim falls within
7  the "dishonest or illegal acts" exclusion in the insurance policy. (*See* DMSJ at 5-6.)
8  Defendant also argues that the evidence does not show bad faith when it reasonably
9  denied the insurance claim and followed reasonable procedures in handling the insurance
10 claim. (*Id.* at 6-9.)

## II. LEGAL STANDARD AND ANALYSIS

Under Federal Rule of Civil Procedure 56, summary judgment is properly granted when: (1) there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." General contract principles govern the interpretation of insurance policies. *Ins. Co. of N. Am. v. Superior Court In & For Cnty. of Santa Cruz*, 800 P.2d 585, 589 (Ariz. 1990). "[A] court will attempt to enforce a contract according to the parties' intent." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993).

### A. Breach of Contract Claim – Application of Policy Exclusions

The parties' coverage dispute centers on a policy exclusion applying to property loss or damages resulting from "dishonest or criminal acts." The exclusion reads:

2. We will not pay for loss or damage caused by or resulting from any of

the following:

. . . .
    e. Dishonest or criminal acts by:
        (1) you, any of your partners, employees, directors, trustees,
        or authorized representatives;
        (2) A manger or member if you are a limited liability
        company;
        (3) Anyone else with an interest in the property, or their
        employees or authorized representatives; or
        (4) Anyone else to whom the property is entrusted for any
        purpose.

(Doc. 26-1, Ex. 2, AGCS 000373 Policy Exclusion 2e.) Defendant argues that this policy exclusion applies because Mr. Callan entrusted the machines to Ms. Reveles and Mr. Mitchell, and he admitted to Defendant's investigators and at his deposition that he suspected Ms. Reveles and Mr. Mitchell of dishonest acts in connection with the machines' disappearance. (*See* DMSJ at 5-6.)

As a threshold issue, Plaintiff argues that this exclusion does not apply because Defendant has not shown that Ms. Reveles and Mr. Mitchell were "employees" or "authorized representatives" of Arcade Entertainment rather than "independent contractors." (Doc. 30, Pl.'s Reply to Def.'s Resp. to PMSJ & Pl.'s Resp. to DMSJ ("Pl.'s Resp. & Reply") at 5-7); *see Hudnell v. Allstate Ins. Co.*, 945 P.2d 363, 365 (Ariz. Ct. App. 1997). Whether Ms. Reveles and Mr. Mitchell were employees, authorized representatives, or independent contractors is immaterial here because the exclusion is broad enough to cover the relationship Ms. Reveles and Mr. Mitchell had with Plaintiff. (AGCS 000373 Policy Exclusion 2e. (excluding coverage for property damage caused by or resulting from "[d]ishonest or criminal acts by . . . [a]nyone else to whom the property is entrusted for any purpose.").) Plaintiff argues that this provision does not apply because Ms. Reveles and Mr. Mitchell were somehow not "entrusted" with the arcade machines despite servicing and maintaining them; instead, Plaintiff contends it merely "trusted" them. (*See* Pl.'s Resp. & Reply at 5-7.)

"[Courts] look at an insurance contract from the perspective of an average layman and give words their common and ordinary meaning." *Aztar Corp. v. U.S. Fire Ins. Co.*,

224 P.3d 960, 971-72 (Ariz. Ct. App. 2010). Plaintiff's interpretation is unreasonably narrow given the ordinary meaning of "entrusted," a definition that includes the assignment of responsibilities to someone. *Entrust*, Black's Law Dictionary (10th ed. 2014) ("To give (a person) the responsibility for something . . . ."); *Entrust*, Merriam-Webster Online ("to give someone the responsibility of doing something or of caring for someone or something") (exs.: "She was entrusted with the job of organizing the reception." "[W]e entrusted our financial adviser with the investment of all of our savings[.]"). Mr. Callan hired Ms. Reveles and Mr. Mitchell to be fully responsible for not only servicing and maintaining the arcade machines, but also for relocating the machines to different businesses and deciding how long the machines would be placed at a location. (*See* Callan Interview at 37.) Plaintiff "entrusted" the machines to Ms. Reveles and Mr. Mitchell.

The Court now turns to whether the evidence in the record creates any triable issues concerning the application of the policy exclusion. To prove that Ms. Reveles's and Mr. Mitchell's dishonest acts led to the machines' disappearance, Defendant relies on statements Mr. Callan made to claims investigators before he was represented by counsel as well as from his deposition testimony. (DMSJ at 5-6; *see* Doc. 26-1, Ex. 3, Callan Interview.) Defendant interprets Mr. Callan's statements as showing his suspicion that Ms. Reveles and Mr. Mitchell had something to do with the machines' disappearance. Mr. Callan did not tell Ms. Reveles and Mr. Mitchell that he was coming to Texas to investigate the machines' declining revenue "because he suspected Ms. Reveles of falsifying her revenue reports and was concerned she would move the machines or that something would happen to the machines." (*See supra* at 2; Callan Interview at 32.) Mr. Callan gathered the few recovered machines so they would not go missing and placed them in the same storage facility where the theft occurred, but selected a new locker that Ms. Reveles and Mr. Mitchell could not access. (*See supra* at 2; Callan Dep. at 47:3-21.)

Plaintiff challenges the sufficiency of this evidence, claiming that Defendant seeks to prove the policy exclusion by mere speculation rather than actual proof. (Pl.'s Resp. &

Reply at 4-5.) Speculation refers to unsupported allegations. *See Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("[T]he Government has not cited any portion of the record that demonstrates or even implies the validity of its propositions. A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data."). There is nothing speculative about Defendant's interpretation of the evidence and reasonable conclusion that Ms. Reveles's and Mr. Mitchell's "dishonest acts" led to the machines' disappearance. Ms. Reveles and Mr. Mitchell were responsible for overseeing the machines' placement in local businesses and had exclusive access to the machines in storage. Forty-seven machines disappeared on their watch, with the local store owners and staff telling Mr. Callan that Ms. Reveles and Mr. Mitchell had removed the machines from the stores. There was no evidence of forcible entry at the storage locker or evidence suggesting that some unknown third-party stole the machines. Plaintiff does not cite any evidence in the record that explains what happened to the machines. This lack of controverting evidence means that there are no triable issues under the exclusion. Defendant is entitled to prevail on the breach of contract claim as a matter of law based on the "dishonest or criminal acts" policy exclusion.

### B. Bad Faith Claim

Under Arizona law, a duty of good faith and fair dealing is implied in every insurance contract. *Lennar Corp. v. Transamerica Ins. Co.*, 256 P.3d 635, 639 (Ariz. Ct. App. 2011). Bad faith liability extends not only to coverage decisions, but to instances in which the insurer acted unreasonably "in the investigation, evaluation, and processing of the claim" and "either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). An insurer acts unreasonably by failing to immediately investigate and evaluate a claim, failing to promptly pay an approved claim, and creating needless obstacles that prevent the insured from obtaining payment under the policy. *Id.* Because the Court has already concluded that a policy exclusion applies, Defendant's coverage denial cannot be

unreasonable. The only remaining theory is whether Defendant acted unreasonably in how it processed the insurance claim.

Plaintiff moves for summary judgment on the bad faith claim, contending that Defendant's claims processing was inadequate and untimely because of the time it took to make a final coverage decision. (*See* PMSJ at 12-13; Pl.'s Resp. & Reply at 8-9.) Plaintiff argues that Defendant could have made a final coverage decision in late 2013, but intentionally declined to "on the pretext of having to interview [Ms. Reveles and Mr. Mitchell]" and forced Plaintiff "to go through needless adversarial hoops to achieve its rights under the policy." (Pl.'s Resp. & Reply at 8-9 (quoting *Zilisch*, 995 P.2d at 280).) Defendant moves for summary judgment on this claim, arguing that "the investigation in this case took time and this time was lengthened by Plaintiff's failure to properly assist Defendant in its investigation of the claim." (DMSJ at 8.)

Plaintiff's argument is premised entirely on speculation and ignores the realities of coverage decisions based on complicated, multi-issue investigations. There is nothing in the record suggesting that Defendant acted unreasonably by attempting to learn more about the background of the insurance claim or that the manner of its investigation was unreasonable before or after this lawsuit was filed in late April 2014. Defendant started the investigation almost immediately after Mr. Callan submitted the insurance claim. The investigators were unable to find Ms. Reveles and Mr. Mitchell until February or March 2014. Mr. Mitchell provided only a limited statement at that time. Investigators were still trying to get Ms. Reveles and Mr. Mitchell to cooperate in giving a statement when this lawsuit was filed. In October 2014, there were still outstanding investigation issues. (*See* Lupear Dep. at 18:17-19:2 ("We're investigating to validate the facts of the loss to see how the theft occurred, where the theft occurred, to validate where the machines were, to get the values of those machines. There was a lot of information we gathered and are still trying to gather.").) This is not evidence of intentional, pretextual delay. Plaintiff would have the Court impose obligations on insurers that are not found in any controlling case law. Defendant is entitled to summary judgment on the bad faith claim.

### III. CONCLUSION

The evidence in the record does not create any genuine issues of material fact. Defendant did not breach the insurance contract because it properly denied insurance coverage based on the "dishonest or criminal acts" policy exclusion. The record also contains no facts to support a bad faith claim based on Defendant's processing of the insurance claim. There is no evidence that Defendant intentionally failed to make a final coverage decision in a timely manner.

**IT IS ORDERED** denying Plaintiff Arcade Entertainment, LLC's Motion for Summary Judgment (Doc. 22).

**IT IS FURTHER ORDERED** granting Defendant AGCS Marine Insurance Company's Motion for Summary Judgment (Doc. 25).

**IT IS FURTHER ORDERED** vacating the oral argument scheduled for March 30, 2015 at 10:00 a.m. (Doc. 31).

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment in favor of Defendant.

Dated this 18th day of March, 2015.

_____
Susan R. Bolton
United States District Judge